163 So.2d 425 (1964)
Succession of Teresa Romo MEDICA.
No. 10166.
Court of Appeal of Louisiana, Second Circuit.
April 1, 1964.
Rehearing Denied April 30, 1964.
Writ Refused June 8, 1964.
*426 Robert E. Eatman, Shreveport, for appellant.
Dixon & Malsch, Shreveport, for appellee.
Before GLADNEY, AYRES and BOLIN, JJ.
GLADNEY, Judge.
Jerrold M. Bloomer instituted this action against Mary Romo Gonzales, the duly confirmed administratrix of the Succession of Teresa Romo Medica, alleging that John Medica was the sole and only heir of Teresa Romo Medica, praying that the administration of Teresa Romo Medica be terminated and that the assets belonging to said succession be delivered to the petitioner. Mary Romo Gonzales answered the petition, asserting as her sole defense that John Medica was an unworthy heir and could not inherit from his wife. Upon the facts alleged, the trial court sustained a motion for judgment on the pleadings in favor of Jerrold M. Bloomer, the administrator of the Succession of John Medica. Mary Romo Gonzales has appealed.
The pleadings disclose that Teresa Romo Medica was married but once and then to John Medica, of which union no children were born, and she was survived by no ascendants. She died on February 4, 1961, survived by her husband, John Medica. Death was due to bullet wounds which Mary Romo Gonzales, a sister of the deceased, alleges were unlawfully inflicted by John Medica. John Medica was charged with the crime of manslaughter but prior to a grand jury hearing he committed suicide.
The sole issue presented is the right of Mary Romo Gonzales to question the unworthiness of John Medica under the facts and circumstances alleged in the pleadings. Its resolution depends upon the application of certain articles of the LSA-Civil Code, and particularly Articles 965, 966 and 967, found in Chapter 5, entitled "OF THE INCAPACITY AND UNWORTHINESS OF HEIRS.", Articles 950 to 975, inclusive. Because of their significance, Articles 965, 966 and 967 are quoted in full:
"Art. 965. There is this difference between being unworthy and incapable of inheriting, that he who is declared incapable of inheriting, has never been heir, whilst he who is declared unworthy, is not the less heir on that account, *427 if he has the other qualities required by law to inherit. Thus a person unworthy of inheriting remains seized of the succession, until he is deprived of it by a judgment, which declares him divested of it for cause of unworthiness.
"Art. 966. Persons unworthy of inheriting, and, as such, deprived of the successions to which they are called, are the following:
"1. Those who are convicted of having killed, or attempted to kill, the deceased; and in this respect they will not be the less unworthy, though they may have been pardoned after their conviction.
"2. Those who have brought against the deceased some accusation found calumnious, which tended to subject the deceased to an infamous or capital punishment.
"3. Those who, being apprised of the murder of the deceased, have not taken measures to bring the murderer to justice.
"Art. 967. The unworthiness is never incurred by the act itself; it must be pronounced by the court in a suit instituted against the heir accused of unworthiness, after he has been duly cited."
Counsel for appellant asserts the trial court erred, and in support thereof argues two points: (1) that, as used in LSA-Civil Code Article 966, the word "convicted" comprehends its use in any judicial proceeding, whether civil or criminal, and should not be limited in its meaning to a criminal conviction; and (2) that the suicide of John Medica has imposed upon his heirs an estoppel which prevents them from urging an absence of a criminal conviction.
After studying the context of the Codal Article, we are convinced that a conviction in a criminal proceeding only is implied. This construction is supported by the phraseology employed throughout the articles above referred to, such as: "pardoned after their conviction", "accused", "infamous and capital punishment", "murder", and "murderer to justice".
In commenting on Article 727 of the Code Napoleon, corresponding to Article 966 of our Civil Code as set forth above, Planiol Traite Elementaire de Droit Civil (Louisiana Law Institute translation), Volume 3, part. 1, No. 1738, states:
"Art. 727, it. 1, declares as unworthy a person `convicted for having killed or attempting to kill the decedent'. Because conviction is necessary the suspect who dies before conviction does not become unworthy. The same happens if the right to prosecute him has been extinguished by the statute of limitations."
Our research indicates a paucity of Louisiana cases interpretative of LSA-Civil Code Article 966. Cited by counsel for appellees are Sharp v. Sharp, 228 La. 89, 81 So.2d 820 (1955), and Grandchampt v. Administrator of the Succession of Billis, 124 La. 117, 49 So. 998 (1909).
In Sharp v. Sharp, a petition was filed to have the widow declared unworthy of inheriting her husband's estate on the ground that she had intentionally shot and killed her husband, but the petition contained no allegation that the wife had been convicted of having killed or attempted to kill her husband. The trial court sustained an exception of no cause of action and his decision was reviewed by the Supreme Court with the following pronouncement:
"The exception of no cause of action was argued and submitted, and was sustained by the trial judge on the ground that petitioners had failed to allege that the defendant, the surviving wife, had been convicted of having killed or attempted to kill the deceased.

*428 "We think the trial judge was correct in his ruling on the exception. The record shows that the facts surrounding the death of the deceased had been investigated by the grand jury, which returned a `no true bill'. Under the provisions of paragraph 1 of Article 966 of the Civil Code, which is the basis of plaintiff's suit, `Persons unworthy of inheriting and, as such, deprived of the succession to which they are called, are the following:
"`1. Those who are convicted of having killed, or attempted to kill, the deceased; and in this respect they will not be the less unworthy, though they may have been pardoned after their conviction.'"
Grandchampt v. Administrator of the Succession of Billis involves a studious discussion of the right to have a donation revoked or dissolved on account of the ingratitude of the donee, requiring consideration of LSA-Revised Civil Code Articles 1559, 1569 and 1710. This case is not authority for the instant decision, although it contains comments which relate to an heir who has been adjudged unworthy because of crimes or offenses against the de cujus.
Counsel for appellant refers to a comment with respect to Article 957 of the Code Napoleon, which corresponds to our Civil Code Article 1561, found in Planiol Traite Elementaire de Droit Civil (Louisiana Law Institute translation), Volume 3, Part 1, No. 1748:
"(2) Declaration of unworthiness after the death of the unworthy person. Some writers think that this is impossible, because of the principle of personal punishment (Art. 2, C.Crim. Proc.); they also rely on Art. 957, which prohibits the demand of revocation of a donation after the death of the donee. The majority of writers, though, have a different view. They claim that the principle of personal punishment applies only to criminal punishment proper, not to its corollaries in the sphere of civil law; and that Art. 957 is contrary to general law, according to which a person transfers his right to his heirs including the causes of extinction, which possibly affect them.
As we remarked with respect to the Grandchampt case, it is our conclusion that such comments with reference to revocation of a donation on the grounds of ingratitude are inapposite.
Under the theory advanced by counsel for appellant the mere preponderance of the evidence in a civil proceeding would suffice to sustain a declaration of unworthiness, even where there had been no criminal conviction. The contention overlooks the fact that before a court of justice an accused charged with murder or attempted murder is entitled to a presumption of innocence until he has been proven guilty. Punishment under our law is personal and the presence of the accused during the trial is essential to a fair trial. LSA-Civil Code Article 967 clearly requires that before such a conviction may be pronounced the heir accused must be duly cited in the suit instituted against him. For these reasons, it necessarily follows that where, for any reason, the accused dies prior to a conviction, there can be no determination of unworthiness by the court. Sharp v. Sharp, supra. The defense in the nature of an estoppel against the heirs of John Medica must fall for the same reason as stated above. Only a criminal conviction can justify a declaration of unworthiness.
Accordingly, it is the finding of this court that the death of John Medica prior to a conviction for the crime charged precludes any declaration of unworthiness. The judgment from which appealed is affirmed at appellant's cost.
Affirmed.