SAVOIE, Judge.
The plaintiff/appellant in this suit is Sherman A. Bernard, Commissioner of Insurance, State of Louisiana, as rehabili-tator of First Republic Life Insurance Company (hereinafter Plaintiff). Defendant/appellee is J. Burton LeBlanc (hereinafter Defendant). Plaintiff appeals the judgment of the trial court, following trial on the merits, in favor of Defendant.
FACTS
This case concerns the ownership of shares of stock pledged to secure some promissory notes. Defendant executed a $715,000.00 note payable to International City Bank (ICB) on December 2, 1976; he lent the funds he received from the bank to Jules LeBlanc, his son, and Rodolfo Aguilar, a business associate of Jules’. Defendant’s note was secured by a note for $715,-000.00 executed on December 2, 1976 by Jules LeBlanc and Rodolfo Aguilar. Securing this note was a pledge of 129,713 shares of American Commonwealth Financial Corporation (ACFC) stock.
Of the ACFC stock, 129,698 shares were registered on the books of ACFC in the name of Roger LeBlanc (also Defendant’s son), and 15 shares were registered in the name of Robinson Humphrey Co., Inc. Attached to the share certificates were assignments signed by Roger LeBlanc and by Robinson Humphrey. The shares were not assigned to any person or corporation; the attached assignments were simply executed in order to pledge the stock. The pledge of the stock was noted on the back of the promissory notes. There was no pledge agreement listing specific share certificates and identifying a specific pledgor or pledgee; all the .pledged shares were simply in the possession of ICB. The stock was initially pledged to ICB on December 31, 1975. We would note that there is nothing in the record that would indicate that Defendant had any reason to believe that Roger LeBlanc was not in fact the owner of the stock at the time it was pledged or that Defendant had any reason to believe that Roger was precluded from *99 executing the assignments of the stock certificates.
On January 13,1978, the shares of ACFC stock pledged at ICB were released from pledge. This release came about due to the following events. Plaintiff was selling the assets of First Republic Life Insurance Company (FRLIC) to ICH Corporation. The main asset of FRLIC was the stock that its wholly owned subsidiary, Commonwealth Securities Corporation (CSC), owned. FRLIC had acquired CSC’s stock through the liquidation of CSC into FRLIC. The stock which CSC owned was that of American Commonwealth Financial Corporation (ACFC). Plaintiff contended that 72,513 shares of the ACFC stock pledged at ICB were beneficially owned by CSC. Plaintiff sold the 72,513 shares of stock to ICH at $3.85 per share ($279,175.05). In order to secure the release of the stock from the pledge, Defendant had ICH pay the $279,175.05 to the Federal Deposit Insurance Corporation (FDIC) as receiver of ICB. The FDIC then released the stock from the effect of the pledge. Plaintiff obtained no conventional subrogation from Defendant.
Plaintiff made no claim to the remainder of the ACFC stock pledged to ICB. These 57,200 shares were sold by Roger LeBlanc to ICH at $3.85 per share. As with the 72,513 shares of stock, in order to secure the release of the stock from the pledge Defendant authorized ICH to pay the money directly to FDIC.
Plaintiff filed suit against Defendant to recover the $279,175.05 ICH paid to ICB through FDIC in order to release the 72,-513 shares of stock from the pledge. Plaintiff claimed that he was entitled to recovery because although Roger was the registered owner, Plaintiff through CSC was the beneficial owner of the stock. The Plaintiff alleged that he was legally subro-gated to the rights of FDIC against Defendant.
At the trial of the case, following the presentation of the Plaintiff’s case-in-chief, the Defendant moved for a directed verdict. The trial court denied the motion, finding that while Plaintiff had no right to legal subrogation under LSA-C.C. art. 2161.3, he had made out a prima facie case for unjust enrichment. The Defendant then presented his evidence and the court found for Defendant.
ASSIGNMENTS OF ERROR
Plaintiff urges two assignments of error. Assignment of error No. 1 is that the trial court erred in finding that the failure to change the registration of the ACFC stock from the name of Roger LeBlanc or from an endorsement in blank to the name of CSC shows that Roger LeBlanc owned the ACFC stock. Assignment of error No. 2 is that the trial court erred in giving greater weight to the testimony of Roger LeBlanc, a defense witness, than to that of Ted Dove, Plaintiff’s only witness.
FAILURE TO CHANGE REGISTRATION OF STOCK TO CSC’S NAME
The trial judge, in discussing his reasons as to his finding that Roger. owned the ACFC shares, stated:
Dove testified that a number of shares of ACFC stock belonging to CSC did not show CSC as a registered owner. However, Dove also testified that he changed the ownership to reflect the true ownership of all the shares he had in his possession. Thus, the failure to change the registered ownership of the shares in question suggest[s] that Roger LeBlanc in fact owned the shares.
Primary testimony supporting Plaintiff’s claim that CSC owned the ACFC stock rather than Rogér consisted of the testimony of Ted Dove. Dove was an employee of Roger LeBlanc and of ACFC, and he was also an officer of CSC. CSC was formed on July 28, 1975; on that date, authorized by a corporate resolution, Roger exchanged 1,100,000 shares of ACFC stock for 128,546 shares of CSC stock. This exchange was documented in writing. Ted Dove was the representative of CSC and the act of exchange was signed by both Dove and Roger. The act of exchange does not show the certificate numbers of the ACFC stock Roger exchanged for the CSC stock. It is *100 Plaintiffs contention that the stock pledged at ICB was owned by CSC by virtue of this tax free exchange. Defendant contends that the 72,513 shares of ACFC stock were not part of this exchange, and that the 72,513 shares belonged to Roger LeBlanc.
Plaintiff contends that the trial court’s reliance on the registered ownership of the shares was based on the statute defining the legal owner of stock, LSA-R.S. 12:601, which reads as follows:
The person, firm, or corporation, in whose name a certificate representing shares of stock stands, or to whom a certificate is endorsed, whether in full or in blank, and who has possession of said certificate, shall be regarded as the legal owner. The legal owner has full power to pledge, sell or otherwise dispose of said stock. No person, corporation, firm or transfer agent shall be responsible to anyone claiming any interest in, or ownership of, said shares, or any part thereof, by virtue of any undisclosed or latent legal or conventional title or interest therein.
Plaintiff argues that the statute is only applicable to third persons, and not between the parties, citing Succession of Dunham, 408 So.2d 888, 893 (La. 1981), and Wilson v. H.J. Wilson Co., Inc., 430 So.2d 1227 (La.App. 1st Cir.1983). Plaintiff further urges that LSA-R.S. 12:601 is only applicable to innocent third parties. Plaintiff contends that Defendant is not an innocent third party, because he is the beneficiary of the pledge of stock. For these reasons, Plaintiff argues that Defendant is not entitled to the protection of LSA-R.S. 12:601.
Plaintiffs contention has no merit. Neither case cited to support his contention refers to innocent third parties. Rather, both cases simply say that LSA-R.S. 12:601 protects third parties. In Succession of Dunham, the supreme court stated:
The purpose of this statute [LSA-R.S. 12:601], rather than to provide the requirements for a valid and irrevocable transfer of stock, is to provide protection for third persons who deal with the record owners of the stock and also to establish when one may be considered the record owner_ [Although R.S. 12:601 may protect third persons dealing with the apparent owner of the stock, as between the parties compliance with R.S. 12:601 does not necessarily indicate a transfer of ownership. Rather, we must look to the intent of the parties. (Citations omitted). 408 So.2d at 893.
Defendant is a third party under LSA-R.S. 12:601, as it has been interpreted by our courts. The two parties to the transaction are CSC and Roger LeBlanc; any other person or entity is a third party who is entitled to rely on the stock certificate registration to determine ownership. For these reasons, Plaintiffs assignment of error No. 1 has no merit.
TED DOVE’S TESTIMONY AND HIS SPREADSHEET
Plaintiffs second assignment of error is the trial court’s giving greater weight to the testimony of Roger LeBlanc than Ted Dove. In determining the ownership of the ACFC stock, the trial judge also considered the testimony of Ted Dove, the Plaintiffs sole witness and the spreadsheet showing CSC’s alleged ownership prepared by Ted Dove. Evaluation of a witness’ credibility and the weight to be given a witness’ testimony is a function of the trial judge, who actually hears and sees the witness testify. Burbank v. LeBeouf, 471 So.2d 980 (La.App. 1st Cir.1985). After examining the record, we cannot say that the trial judge was manifestly erroneous in giving greater weight to the testimony of Roger LeBlanc.
Ted Dove’s testimony dealt solely with a spreadsheet which he had prepared in an attempt to reconstruct the particular share certificates which CSC received from Roger in the July 18, 1975 exchange. The spreadsheet showed that the 72,513 shares in Roger’s name pledged to ICB were beneficially owned by CSC. The spreadsheet was prepared in 1977, two years after the exchange. It was based on Dove’s reports to the Securities and Exchange Commission and other corporate records which were not *101 introduced into evidence. Yet, as Dove testified, all filings with the SEC show ownership according to number of shares and not according to registered or legal ownership.
The SEC reports were also not reliable because Dove testified that Roger could have owned more shares than reported to the SEC, particularly since Roger was trying to take over ACFC. Further, at the time Dove filed the documents with the SEC he was trying to reconstruct what had taken place two years earlier with the tax free exchange.
There was testimony and evidence in the record to show the looseness of the record keeping at FRLIC and CSC. Jerry Willis, the Chief Examiner for the Commissioner of Insurance, called by Defendant as a witness, and the report of Alexander Grant & Company, an accounting firm, both attest to the disarray of FRLIC’s and CSC’s records.
When questioned about the July 28, 1975 exchange, Dove testified that he never actually received 1,100,000 shares of CSC stock from Roger. He was also asked why if the exchange took place on July 28,1975, and the ACFC stock was pledged to ICB on December 31, 1975, he did not transfer the stock to CSC’s name. Dove testified that Roger prevented him from doing so,
Roger, on the other hand, affirmatively testified that he owned the ACFC shares of stock pledged to ICB. He also testified that he never prevented Ted Dove from changing the registration of stock certificates to comport with the July 28, 1975 exchange. Roger was questioned about a letter he had sent to ICB which requested that it transfer 72,513 shares of ACFC stock into CSC’s name. Roger testified that Ted Dove prepared the letter, and that he simply signed it; further, he testified that ICB never carried out his request.
As to Plaintiff’s contention that according to the SEC reports, Roger could not have owned the 72,513 shares of stock pledged to ICB, Roger testified that the SEC reports were simply attempts to reconstruct what had happened years before; he further said that he owned more stock in ACFC stock than he disclosed to the SEC.
As to the July 28, 1975 exchange, Roger testified that he did not exchange all his stock in ACFC for the CSC stock. He exchanged 1.1 million shares, and he said he owned an additional two hundred thousand more shares of ACFC.
After examining the record, we find that the trial judge was correct in finding that Plaintiff did not prove that CSC owned the ACFC stock pledged to ICB. Plaintiff’s assignment of error No. 2 has no merit.
UNJUST ENRICHMENT
Plaintiff states in his brief that the only reason the trial court denied his recovery under the theory of unjust enrichment was because Plaintiff failed to prove his ownership of the ACFC stock. The clear implication of Plaintiff’s argument is that the four remaining elements of unjust enrichment were, however, found by the trial court. Such is not the case.
We should note though that while the trial judge in his written reasons for judgment stated that in particular, Plaintiff failed to prove impoverishment, he did not go on to state that the remaining four elements of unjust enrichment were proved. That portion of the trial judge’s written reasons dealing with unjust enrichment is as follows:
In order for plaintiff to recover under this theory [unjust enrichment], plaintiff must prove the following:
1. That J. Burton LeBlanc was enriched;
2. that FRLIC was improverished [sic];
3. that there was a connection between the enrichment and the improverishment [sic];
4. that there was an absence of justification (cause) for the enrichment or im-proverishment [sic]; and,
5. that FRLIC has no other remedy at law.
This Court finds that FRLIC has not proven the necessary elements to recover under the theory of unjust enrichment. *102 More particularly, FRLIC failed to prove that it had been improverished [sic] because it failed to prove that it owned the ACFC stock.
To recover under unjust enrichment, a claimant must prove all five elements; if any one element is not proven, Plaintiff’s recovery is barred. Hoover v. Hoover, 313 So.2d 358, 363 (La.App. 4th Cir.1975). While we agree with the trial court’s finding that the Plaintiff failed to prove impoverishment, we additionally find that there was no enrichment on the part of Defendant. Defendant properly released his right of pledge over the stock which was security for his loan at ICB. Upon payment of the funds releasing the stock from the pledge, Defendant simply applied those funds to the' unpaid loan against which they were pledged. Defendant was not enriched by this release of security in exchange for reduction of the loan.
For these reasons, the judgment of the trial court is affirmed. Costs to be assessed against appellant.
AFFIRMED.