670 So.2d 644 (1996)
Trevor Nash TENPENNY, Plaintiff-Appellee,
v.
Cheryl L. RINGUET and State Farm Insurance Company, Defendants-Appellants.
No. 95-1036.
Court of Appeal of Louisiana, Third Circuit.
March 6, 1996.
Writ Denied May 17, 1996.
*646 James Michael Wooderson, Lafayette, for Trevor Nash Tenpenny.
Kenny Layne Oliver, Lafayette, for Cheryl L. Ringuet and State Farm Insurance.
Wendell Verret, New Iberia, for University Medical Center, et al.
Before YELVERTON, WOODARD and AMY, JJ.
WOODARD, Judge.
The plaintiff, Trevor Nash Tenpenny, sued the defendants, Cheryl L. Ringuet and State Farm Mutual Automobile Insurance Company, because of a vehicular accident between Tenpenny and Ringuet. Following a bench trial, the judge ruled in favor of Tenpenny, and the defendants have appealed.

FACTS & ACTIONS OF TRIAL COURT
Both defendant, Ringuet, and plaintiff, Tenpenny, were traveling in the same direction on Johnston Street in Lafayette when the accident giving rise to this lawsuit occurred. Ringuet was driving an automobile and in the right-hand lane of the four-lane street. Tenpenny was riding a bicycle on the right-hand shoulder of the street. When *647 Ringuet turned right at the entrance to a supermarket, she and Tenpenny collided.
As a result, Tenpenny filed this lawsuit against Ringuet and her liability insurer, State Farm. He alleged that the injuries he sustained exceeded the amount required to establish his right to a jury trial. In their answer and reconventional demand, the defendants denied this but requested a jury trial. On the morning of trial, March 16, 1995, Tenpenny orally moved to amend his original petition to reduce his demand for damages below $50,000.00 and for a judge trial. The defendants objected but were overruled, and after a bench trial, the judge found Ringuet 70% at fault, Tenpenny 30%, awarding to Tenpenny damages totaling $47,387.74.
The defendants on appeal assign three errors to the trial court.

ASSIGNMENTS OF ERROR
The defendants contend that the trial court erred in: (1) its decision to allow Tenpenny to have a judge trial, depriving them of their right to a jury trial, (2) its determination of liability, and (3) its award of damages.

ASSIGNMENT OF ERROR NUMBER ONE
Article 1732(1) of the Louisiana Code of Civil Procedure states that a jury trial is not available in a suit "where the amount of no individual petitioner's cause of action exceeds fifty thousand dollars exclusive of interests and costs." The plaintiff or the defendant's right to a jury trial depends on the good-faith amount in dispute and not necessarily on the amount initially demanded by the plaintiff. Cambridge Corner Corp. v. Menard, 525 So.2d 527 (La.1988). When the good-faith amount in dispute exceeds the statutory threshold for a jury trial, a plaintiff should not be able to decrease his initial demand below that statutory figure for the purpose of preventing a jury trial. Id. However, the initial amount demanded will not always determine the right to a trial by jury, even when it was demanded in good faith; many times through discovery and preparation for trial, a plaintiff will discover that his claim is actually worth more or less than what he initially demanded. Id.
Tenpenny, as the party who contends that he comes within the exception to a general rule established by statute, has the burden of proving that his case is within La.Code Civ.P. art. 1732(1), which is an exception to the general right of trial by jury. We hold that the trial judge did not err in concluding that Tenpenny met his burden, and we thus affirm.
Defendants, more or less, rely on the dictum that appearances speak for themselves. Defendants assert that Tenpenny waited until the morning of the trial to orally amend to reduce his allegations of damages to below $50,000.00 and to simultaneously ask for a bench trial. That Tenpenny at no time previous to the day of trial represented to the court that his damages were less than $50,000.00 clearly indicates that he was engaging in transparent procedural maneuvering, say the defendants, and procedural maneuvers designed solely for the purpose of depriving a litigant of the right to a jury trial based on the jurisdictional amount are disfavored. Black v. Prudential Property & Cas. Ins., 93-878 (La.App 3 Cir. 3/2/94); 634 So.2d 1340.
That Tenpenny asked to amend his pleading and asked for a judge trial on the day that the jury trial was scheduled to commence seems to be true. However, this fact alone is not necessarily dispositive. This court considered that very issue in Recard v. Trinity Universal Ins. Co., 503 So.2d 519 (La.App. 3 Cir.), writ granted, 506 So.2d 105, dismissed, 509 So.2d 1011 (La.1987). In Recard, the trial court allowed Recard to reduce his demand below the statutory threshold on the morning of trial. He had initially demanded $250,000; the court allowed him to amend to $9,999.99, one cent below the $10,000 threshold. The court awarded $9,999.99. On appeal to us, the appellants argued, as here, that Recard's sole purpose for doing what he did was to prejudice them and circumvent their right to a jury trial. We find our analysis in Recard instructive:
A trial court has much discretion in refusing or allowing an amendment to a petition after an answer is filed, and his ruling will not be disturbed on appeal unless *648 there has been an abuse of the broad discretion vested in him.
* * * * * *
A litigant's right to a jury trial, when timely applied for, is fundamental in character and should be protected in all cases except those in which it is specifically denied by law. Therefore, every presumption against a waiver, loss or forfeiture of the right to a trial by jury will be indulged by the courts. However, the right to a jury trial is contingent upon the good faith amount in dispute, and not simply the amount demanded. [Citations omitted.]
Recard, 503 So.2d at 523. The court in Recard found that the trial court had not abused its discretion in finding that Recard was in good faith. His initial demand was inflated. Thus, the trial court did not abuse his discretion and did not unjustly deprive appellants of their right to a jury trial. Id. Thus, that Tenpenny made his request on the day of trial, in and of itself, does not demonstrate lack of good faith.
Similarly, we find that the trial judge could have reasonably concluded that Tenpenny was not engaging in procedural maneuvers, but instead had, as a result of ongoing discovery and trial preparation, re-evaluated in good faith the amount of his damages and realized that they were below $50,000.00. Medical data and opinion from physicians and therapist support the contention that, as of the beginning of 1995, Tenpenny's condition had improved more than perhaps was expected, and was likely to continue to improve faster than first expected. Medical discovery continued until right before the trial date. For instance, Cheryl Troxclair, Tenpenny's physical therapist, saw him and was deposed March 8, 1995, less than a week before trial was fixed. We further note that the statement of the plaintiff's counsel on the record that "[t]here have been negotiations for less than $50,000.00 before today ..." was not disputed by the defendants. This suggests that the defendants were not surprised that the plaintiff's realistic damages may be quantified at less than $50,000.00. Moreover, throughout the history of this suit, especially in their answer and reconventional demand and in the pre-trial stipulations, the defendants have denied that the plaintiff's injuries were severe. In addition, although entitled to do so, we note that the defendants never propounded an interrogatory to Tenpenny seeking specification of the amount sought as damages, nor did they make a general allegation that the claim exceeded the requisite amount to establish their entitlement to a jury trial. La.Code Civ.P. art. 893; May v. Winn Dixie Louisiana, Inc., 613 So.2d 1026 (La.App. 3 Cir.), writ denied, 616 So.2d 704 (La.1993). We further note Ringuet neither asked for a continuance, nor did she take writs to this court. Finally, the defendants never say how they were prejudiced, or even that they were, by a trial before a judge rather than before a jury, other than that they were deprived of their right to a jury trial, which we have addressed.
In sum, we find this assignment of error to be meritless.

ASSIGNMENT OF ERROR NUMBER TWO
By this assignment of error, the defendants on appeal contest the trial court's finding of liability. Specifically, they contend that Ringuet was not at fault and that Tenpenny was totally at fault. We, however, conclude that Tenpenny was not at fault as a matter of law.
In determining the percentage of fault to cast, if any, on the defendant and/or the plaintiff, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed. Socorro v. City of New Orleans, 579 So.2d 931 (La.1991); Inzerella v. Wal-Mart Stores, Inc., 92-1371 (La.App. 3 Cir. 2/16/94); 640 So.2d 329. Because factual considerations may influence the apportionment of degrees of fault, the manifest error-clearly wrong standard of appellate review applies. Consequently, a court of appeal may not set aside a trial court's finding of fact unless it was manifestly erroneous or clearly wrong. Id.
After a review of the record in its entirety, we find that the trial judge erred as a matter of law in ruling that Tenpenny, by riding his bicycle on the shoulder of a busy *649 thoroughfare, violated a statute; namely, La. R.S. 32:74. That statute, subsection (B), prohibits the driver of a vehicle from overtaking and passing other vehicles "by driving off the pavement or main traveled portion of the highway," which, according to the defendants, is what Tenpenny was doing. We, however, find that La.R.S. 32:74 does not apply to bicycles being ridden on the shoulder of a road.
The record reveals, the parties stipulated, the defendants have insisted throughout, and the trial judge agreed, that Tenpenny traveled on the shoulder of the road, and only on the shoulder of the road, during his entire sojourn, right up until the accident. At no time did he enter Johnston Street proper. The shoulder of the street, then, was his chosen pathway of travel and was not utilized as a mere convenience to pass or overtake other vehicles.
La.R.S. 32:1(92) defines a bicycle as a vehicle. Generally, bicyclists have the same rights and duties under law as drivers of other vehicles, subject to exceptions. La. R.S. 32:193, 194. One of these exceptions is, "[w]henever a usable path for bicycles has been provided adjacent to a roadway, bicycle riders shall use such path and shall not use the roadway." La.R.S. 32:197(C) (emphasis supplied). This proposition is fully supported in the case law. In Robertson v. Penn, 472 So.2d 927, 932 (La.App. 1 Cir.), writ denied, 476 So.2d 353 (La.1985), the court said that "[w]here there is no bicycle path or shoulder as here, the bicyclist has no choice but to ride on the highway," thus not only holding that a bicyclist did not have to ride on the road, but explicitly recognizing a preference in favor of a non-highway bicycle path, and implicitly holding that the preferred bicycle path does not have to be one expressly created or designated solely for bicycle travel. That is, that the shoulder of a road or a sidewalk can serve as the preferred bicycle path. See also Bird v. Black, 420 So.2d 1280 (La.App. 3 Cir.1982) and Lebouef v. Montelius, 358 So.2d 332 (La.App. 4 Cir. 1978).
Upon reflection, one can see the sense in this. A bicyclist riding on Johnston Street itself, an extremely busy thoroughfare the record reflects, would be an impediment to the "regular" motor vehicular traffic and would be engaged in an enterprise creating hazard to himself and to others. Therefore, we can appreciate a public policy determination that it would be safer for all concerned for bicycles to utilize alternative pathways, away from motor vehicular traffic, if they are available.
Additionally, the trial judge found that Ringuet also violated a safety statute, La. R.S. 32:104, in that she failed, in entering a private driveway, to turn her vehicle with reasonable safety. The record, viewed in its entirety, supports this finding. Although she testified she gave a turn signal, there is evidence that she was late in giving it. There was also evidence that she did not see Tenpenny, either because she was in a hurry, or because of inattention, or because he was in her "blind spot." Whatever the particulars, the trial judge could have reasonably inferred negligence on her part, finding that if she had allowed herself to be less harried, or if she had been more attentive, she could have taken appropriate and proper precautions, and she then would probably have seen Tenpenny, thus averting the collision.
Therefore, as we conclude that the trial court erred as a matter of law in finding that Tenpenny violated La.R.S. 32:74, and that this mistaken belief was its only reason for ascribing any fault to Tenpenny, and because the record reflects no other basis for his fault, we would reverse the trial court as to its assignment of fault and allocate all fault for causing the accident to Ringuet, had Tenpenny answered Ringuet's appeal or had he appealed in his own right. However, he did neither. A judgment cannot be changed in favor of an appellee who has neither appealed nor answered his adversary's appeal. Conner v. Conner, 594 So.2d 1039 (La.App. 3 Cir.1992). Thus, we cannot increase Ringuet's liability to 100%, and the trial court's judgment as to this assignment will stand.
ASSIGNMENT OF ERROR NUMBER THREE
The defendants, while maintaining that they were deprived of their right to a jury *650 trial, presumably because they believe that the plaintiff had a good-faith claim valued at more than $50,000.00, nonetheless, also contend that the judge abused his discretion in awarding damages below $50,000.00. Specifically, the defendants argue that the general damage award of $28,000.00 for past pain and suffering is too high, and that the awards for future medicals ($1,500.00) and future pain and suffering (8,000.00) are completely unwarranted. We disagree and affirm the trial court.
According to codal and jurisprudential dictate, "[w]hen damages are insusceptible of precise measurement, much discretion shall be left to the court for the reasonable assessment of these damages." La.Civ.Code art. 1999; Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). The Louisiana Supreme Court in Youn, citing Reck v. Stevens, 373 So.2d 498 (La.1979), pointed out that the role of an appellate court in reviewing general damage awards is to review the exercise of discretion by the trier of fact and not to decide what it considers to be an appropriate award. Id.
The Court in Youn expressly disapproved of resorting to a scale of awards gleaned from prior cases with similar injuries, until after the appellate court first determines that the trier of fact has abused its "much" or "great" discretion. Id.
"The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the `much discretion' of the trier of fact. [Citations omitted.]" Id. at 1260. The Youn court emphasized that although the standard of review is difficult to express, is necessarily non-specific, and gives little guidance as to what articulation suffices to justify modification of an award, the theme that emerges from years of jurisprudence is "that the discretion vested in the trier of fact is `great,' and even vast, so that an appellate court should rarely disturb an award of general damages." Id. at 1261. "Each case is different, and the adequacy or inadequacy of the award should be determined by the facts or circumstances particular to the case under consideration." Id at 1260.
We cannot say that the trial judge abused his great discretion. The record is replete with particular facts supporting the award to this particular plaintiff for his particular injuries. The record discloses that Tenpenny underwent surgery with general anesthesia, was placed in a long leg splint, and suffered significant pain. He was left with scars, swelling, pain in the knee and shoulder, and other complications. He has been treated with medication, appliances, and therapy. There were complications, both expected and unexpected, including internal bleeding, pain, chondromalacia, as well as consequent limitations in his activities. There also was testimony that if arthritis develops, he may have some permanent functional disability. The testimony of the medical professionals established a history and prognosis of past and future significant pain that, as of the trial, was ongoing. The therapist testified that it was questionable whether Tenpenny would ever achieve optimal performance. He was still suffering from the effects of his injuries at trial, especially as to pain and physical debilities, and would continue to do so for some time thereafter, if not, to some degree, always.
The awards are not obviously the result of passion or prejudice, and they bear a reasonable relationship to the elements of the proven damages. Id. A rational trier of fact could have perhaps decided that a lower award was more appropriate, but we cannot conclude from the entirety of the evidence on the record, viewed in the light most favorable to the prevailing party, that a rational trier of fact could not have fixed the awards of general damages at the level set by the trial judge in this case, or that this is one of those exceptional cases where such awards are so gross as to be contrary to right reason. Id. at 1261. Since we have found that the trial judge did not abuse his discretion, it would be inappropriate for us to review previous awards in similar cases. Id.
Accordingly, we find this assignment to be without merit.

*651 CONCLUSION
For the foregoing reasons, the judgment of the district court in favor of the plaintiff-appellee, Trevor Nash Tenpenny, is affirmed.
The defendants-appellants, Cheryl L. Ringuet and State Farm Mutual Automobile Insurance Company, are cast with all costs of these proceedings.
AFFIRMED.
AMY, J., dissents and assigns written reasons.
AMY, Judge, dissenting.
I respectfully dissent from the majority's conclusion that Tenpenny's oral motion to amend his petition on the morning of trial to reduce his damages below $50,000.00 was not a procedural maneuver to deprive the defendants of a jury trial. The record substantiates that: (1) both parties requested a jury trial; (2) for approximately seven months after the trial court granted a jury trial, Tenpenny gave no indication to the defendants that his claim would be below $50,000.00; (3) on March 7, 1995, a week before trial, Tenpenny filed proposed jury instructions; (4) on the morning of trial, Tenpenny, again, filed proposed jury instructions; and (5) once the jury was present in the courtroom, Tenpenny, suddenly, orally requested to amend his petition only to reduce his damages below $50,000.00. Therefore, in my view, this was a procedural maneuver specifically designed to deprive defendants of a jury trial. See Black v. Prudential Property & Casualty Insurance, 93-878 (La.App. 3 Cir. 3/2/94); 634 So.2d 1340 (insured's reduction of her demand against her uninsured motorist insurer below the jurisdictional amount was a procedural maneuver to deny insurer its right to a jury trial where both parties requested a jury trial; insured amended petition 10 days before trial; and only change in petition was to reduce damages below the jurisdictional amount). See also Boone v. Louisiana Farm Bureau Casualty Insurance Co., 521 So.2d 548 (La.App. 3 Cir.), writ denied, 531 So.2d 467 (La.1988). Thus, I would vacate the trial court's judgment and remand this case for a jury trial.
There is an additional reason why I conclude this case should be remanded. On the morning of trial, Tenpenny made an oral motion to amend his petition, which was objected to by the defendants. However, a petition must be in writing and must be verified according to the law and then served upon defendant or his or her attorney so that defendant may answer if he or she desires. Also, any amendment to the petition is subject to the same rules. La.Code Civ.P. arts. 852, 863, 891, and 1314; Sharp v. Sharp, 228 La. 89,81 So.2d 820 (1955); Fontenot v. Fontenot, 427 So.2d 27 (La.App. 3 Cir.1983); Industrial Sand & Abrasives v. Quebedeaux, 366 So.2d 999 (La.App. 1 Cir.1978); Bertucci Bros. Construction Company v. Succession of Mitchell, 149 So.2d 675 (La.App. 4 Cir. 1963). Thus, I find that Tenpenny's oral motion to amend his petition has the same legal effect as if it had never been made and the trial court was bound to disregard it and prohibited, under law, from considering it. Sharp, 81 So.2d 820.